2021 AUG 23
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MARISSA H.,<br><br>               Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>               Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:20-cv-00343-DAO<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Marissa H.[1] filed this action asking the court to reverse and remand the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying his claim for disability insurance benefits and supplemental security income. (*See* Opening Br. 1–2, 8, Doc. No. 21.) The Administrative Law Judge ("ALJ") determined Mr. H. did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 16, 24, Doc. Nos. 17–18.) After careful review of the record and the parties' briefs,[2] the court[3] AFFIRMS the Commissioner's decision. As discussed below, the ALJ did not err in his assessment of the psychological evaluation of James Knorr, Ph.D.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in Social Security cases, the court refers to the Plaintiff by his first name and last initial only. The court also uses the party pronouns identified in their briefing. *See* Practices & Procedures, https://www.utd.uscourts.gov/magistrate-judge-daphne-oberg.

[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the appeal will be determined on the basis of the written memoranda, as oral argument is unnecessary.

[3] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 13.)

**STANDARD OF REVIEW**

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner of the Social Security Administration.  This court reviews the ALJ's decision to determine whether the record contains substantial evidence in support of the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Although the court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's."  *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

The ALJ's factual findings will stand if supported by substantial evidence.  42 U.S.C. § 405(g).  The substantial evidence standard "requires more than a scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence or if there is a mere scintilla of evidence supporting it."  *Id.* Rather than mechanically accepting the ALJ's findings, the court will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [ALJ's] decision and, on that basis, determine if the substantiality of the evidence test has been met."  *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  *Lax*, 489 F.3d at 1084.

In addition, the court reviews whether the ALJ applied the correct legal standards.  The court may reverse where the ALJ fails to do so.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th

2

Cir. 1994) ("[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis."); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."). Grounds for reversal also arise where the ALJ fails "to provide this court with a sufficient basis to determine that appropriate legal principals have been followed[.]" *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-step sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant presently engages in substantial gainful activity;

2) The claimant has a medically severe physical or mental impairment;

3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;

3

4) The claimant possesses a residual functional capacity to perform his or his past work; and

5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden, in the first four steps, of establishing a disability that prevents him or her from engaging in prior work activity. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

## PROCEDURAL HISTORY

Mr. H. alleges disability based on combined mental and physical impairments, including chronic depression, generalized anxiety, post-traumatic stress disorder, borderline personality disorder, autism spectrum disorder, chronic migraine headaches, and narcolepsy with cataplexy. (Tr. 292.) He filed an application for disability insurance benefits on January 3, 2017, and for supplemental security income on October 17, 2017, alleging disability beginning June 28, 2016. (*See id.* at 15, 134, 237–49.) Mr. H.'s claim for disability benefits was initially denied on June 5, 2017, and denied again upon reconsideration, on October 3, 2017. (*Id.* at 162–65, 167–69.) His October 2017 claim for supplemental security income benefits was expedited and consolidated with his disability claim. (*See id.* at 244–49.) Mr. H. requested a hearing before an ALJ, which was held on February 5, 2019. (*Id.* at 114–31.)

On May 1, 2019, the ALJ issued a written decision denying Mr. H.'s claim. (*Id.* at 15–24.) At step two of the sequential evaluation, the ALJ found Mr. H. had the severe impairments of narcolepsy, gender dysphoria, depressive disorder, anxiety disorder, panic disorder,

unspecified personality disorder, autism spectrum disorder, and posttraumatic stress disorder. (*Id.* at 18.)  At step three, the ALJ concluded none of Mr. H.'s impairments or combinations of impairments met the severity of the listed impairments.  (*Id.* at 18–19.)  At step four, the ALJ determined Mr. H. had the residual functioning capacity to perform a full range of work at all exertional levels, with the following limitations:

> He can never climb ladders, ropes, or scaffolds.  He must avoid all exposure to hazards.  Additionally, he would be limited to simple, routine, and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple work-related decisions, few workplace changes, and only occasional interaction with the public and co-workers.

(*Id.* at 20.)  The ALJ found Mr. H. unable to perform past relevant work.  (*Id.* at 22.)  However, he concluded jobs existed in significant numbers in the national economy which Mr. H. could perform, such as: kitchen helper, housekeeping cleaner, and document specialist.  (*Id.* at 22–23.) Accordingly, the ALJ concluded Mr. H. was not disabled.  (*Id.* at 23–24.)

The Appeals Council denied Mr. H.'s request for review on April 2, 2020, (*id.* at 1–3), making the ALJ's decision final for purposes of judicial review.  *See* 20 C.F.R. § 404.981.

## ANALYSIS

Mr. H. makes one argument in his challenge to the ALJ's decision.  He argues the ALJ failed to properly weigh the medical opinion of James Knorr, Ph.D.  (Opening Br. 5, Doc. No. 21.)  Mr. H. contends Dr. Knorr offered several specific opinions in his report which should have been weighed by the ALJ.  (*Id.* at 5–7.)  In response, the Commissioner argues Dr. Knorr's recommendations do not qualify as "opinions" under the social security rules because they are so vague.  (Answer Br. 8, Doc. No. 22.)  The Commissioner asserts the ALJ had no way to account for the "ambiguous recommendations" because Dr. Knorr included no information in his

recommendations about Mr. H.'s work-related limitations and failed to translate Mr. H.'s impairments "into vocationally relevant terms."  (*Id.* at 8–9.)

Under the medical-opinions rule, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 416.927(c), 404.1527(c).  In deciding what weight to give a medical opinion, the ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment, including the kind of examination or testing performed; (3) the degree to which the opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the practitioner is a specialist in the topic area; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Id.*  The ALJ need not "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion."  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).  ALJs generally give more weight to the medical opinions of treating sources, as they have a more detailed, longitudinal picture of a claimant's impairments.  20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).  In other words, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003).  Finally, while it must be apparent the ALJ considered all the evidence, there is no requirement that an ALJ *discuss* every piece of evidence.  *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014).

In this case, as the Commissioner points out, the problem is not that the ALJ failed to gauge Dr. Knorr's opinions, it is that Dr. Knorr's recommendations do not provide guidance because they do not address Mr. H.'s impairments or limitations with any specificity.  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments, including [his or her] symptoms, diagnoses and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or

6

mental restrictions."[4]  20 C.F.R. §§ 416.927(a)(1), 404.1527(a)(1).  Mr. H. specifically

complains the ALJ failed to weigh the following opinions from Dr. Knorr's report:

- Mr. H.'s impairments negatively affect his "ability to complete activities of daily living and vocational responsibilities."  (Opening Br. 5, Doc. No. 21 (quoting Tr. 440).)

- Mr. H. may "benefit from an in-home skills program to develop skills relating to completing activities of daily living."  (*Id.* (quoting Tr. 441).)

- Mr. H. may be eligible for Social Security Disability benefits.  (*Id.* at 5–6 (quoting Tr. 441).)

- Mr. H. "should consider accommodations through the Americans with Disability Act for an individual with anxiety and depression.  (*Id.* at 6 (quoting Tr. 441).)

- Accommodations might benefit Mr. H. "to more effectively acquire knowledge and demonstrate his understanding of information."  (*Id.*)

In the first place, it is not clear these vague recommendations qualify as medical opinions

under the legal standard.  Second, even if the statements can fairly be characterized as medical

opinions, they contain too little information about Mr. H.'s functional abilities and limitations to

be of use.  None of these statements give guidance to the ALJ about the extent of Mr. H.'s

specific impairments or how they affect his daily living or ability to work.  Maybe for this

reason, Mr. H. fails to explain how these recommendations reflect limitations or how they should

affect the ALJ's analysis.  Moreover, a couple of Dr. Knorr's suggestions encroach on the

Commissioner's domain, by opining on the ultimate issue of disability.  Because that is a finding

reserved to the Commissioner, such opinions are not entitled to controlling weight or special

significance.  *See* 20 C.F.R. §§ 416.927(d)(3), 404.1527(d)(3).  In sum, the ALJ did not need to

---

[4] This reflects the policy in place at the time Mr. H. filed his application.  A revised definition of "medical opinion," became effective on March 27, 2017.  *See* Revisions to Rules Regarding the Eval. of Med. Evid., 82 Fed. Reg. 5844 (Jan. 18, 2017).  Mr. H. filed his disability insurance application in January 2017, (Tr. 15), so the previous rules and regulations apply. *See* 20 C.F.R. §§ 416.927, 404.1527.

discuss these statements by Dr. Knorr, as they do not amount to uncontroverted or significantly probative evidence.  *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  And where none of the statements contain concrete findings or limitations the ALJ failed to consider, Mr. H. cannot show prejudice from the ALJ's choice not to discuss them.  Accordingly, Mr. H. has not established error in the ALJ's decision.

To the extent Dr. Knorr's opinions were substantive enough to be of use, the ALJ adequately considered them in the context of the medical-opinions rule.  Dr. Knorr is not a treating physician.  Accordingly, his opinion is not entitled to any particular deference.  He is an examining physician who completed a psychological assessment of Mr. H. on October 16, 2018. (Tr. 21, 433–41.)  The ALJ noted this, thereby accounting for the length of the treatment relationship.  The ALJ addressed the nature of treatment by considering the testing Dr. Knorr performed.  (*Id.* at 21.)  He looked at the consistency of Dr. Knorr's opinion with the record as a whole, noting consistency between Dr. Knorr's findings and those of Dr. Hardy, who also completed a consultive psychological examination.  (*Id.*)  It is apparent from this record that the ALJ properly considered the required factors.

Notably, even while claiming error, Mr. H. acknowledges the ALJ gave weight to Dr. Knorr's report and cited to it extensively.  (Opening Br. 6–7, Doc. No. 21.)  The ALJ considered Dr. Knorr's findings in determining whether Mr. H.'s impairments met one of the listed impairments at step three of the sequential analysis.  (*See* Tr. 19 (citing to Dr. Knorr's report at Tr. 433–41).)  And in his step four analysis, the ALJ discussed Dr. Knorr's report in some depth, even adjusting Mr. H.'s limitations to account for Dr. Knorr's examination findings.  (Tr. 21.)  In fact, the ALJ discounted the Agency psychological consultants' opinions because they were inconsistent with Dr. Knorr's findings.  (*See* Tr. 21 ("I have given little weight to the opinion of Agency psychological consultants from the prior determinations because the findings in [Dr.

Knorr's report] establish several psychological impairments . . . not completely controlled with medication.").)  Finally, the ALJ accounted for Dr. Knorr's opinions in his residual functional capacity determination, by limiting Mr. H. "to simple work without fast paced production requirements, involving simple decisions, few changes, and occasional interaction with others," and by limiting his "exposure to heights and hazards."  (*Id.*)  Put differently, the ALJ specifically discussed and extensively relied upon Dr. Knorr's findings in his evaluation of Mr. H.'s claim.

The ALJ properly weighed, considered, and relied upon Dr. Knorr's report and opinion. He accounted for it throughout his decision and in his residual functional capacity analysis.  Mr. H. has not shown the ALJ erred in his evaluation of Dr. Knorr's report; he failed to establish the ALJ had an obligation to specifically discuss the statements in question.

## CONCLUSION

For the reasons set forth above, the court AFFIRMS the Commissioner's decision.

DATED this 23rd day of August, 2021.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge